United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 17, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 24-10191 |
| HUB CITY HOME HEALTH, INC. § | |
| and § | |
| AMERICAN MEDICAL PROGRAMS, INC § | |
| and § | |
| AMERICAN MEDICAL HOME HEALTH § | |
| SERVICES-SAN ANTONIO, LLC § | |
| and § | |
| AMERICAN MEDICAL HOME HEALTH § | |
| SERVICES, LLC § | |
| and § | |
| AMERICAN MEDICAL HOSPICE CARE, § | |
| LLC, § | |
| Debtors. § | Jointly Administered |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

As a matter of first impression, the above captioned five Chapter 11, subchapter V affiliated debtors in this case ("*Debtors*") seek a ruling from this Court on the single issue of whether, as a matter of law, priority unsecured wage claims are included in the category of unsecured debts used to calculate the debt limit for eligibility as small business debtors under subchapter V, Chapter 11 of the United States Bankruptcy Code. This request comes after Mr. Kevin M. Epstein, the United States Trustee, objected to this case proceeding as a subchapter V case because the combined debt in Debtors' cases exceeded the statutory debt limit.

On Friday, February 28, 2025, the Court conducted a hearing and for the reasons stated herein, the Court finds that debts arising from priority unsecured wage claims are included in calculating the debt limit for eligibility as small business debtors under subchapter V, Chapter 11 of the United States Bankruptcy Code. Here, Debtors' combined debt of $3,405,699 exceeds the statutory debt limit of $3,024,725. Hence, Debtors do not qualify for relief as small business

debtors under subchapter V, Chapter 11 of the United States Bankruptcy Code. Accordingly, Debtors' election to proceed as small business debtors is struck and Debtors' cases will proceed as Chapter 11 cases without any special designation of either small business debtors pursuant to 11 U.S.C. §§ 101(51D) and 1182(1) or small business cases pursuant to 11 U.S.C. § 101(51C).

## I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

**A. Background**

1. On November 9, 2024 (the "*Petition Date*") Debtors filed for bankruptcy protection under subchapter V, Chapter 11 of the Bankruptcy Code[1] initiating the bankruptcy cases.

2. On November 12, 2024, the Court entered its order for joint administration.[2]

3. On November 12, 2024, Debtors filed their "Expedited Motion For Order Authorizing Debtors' Payment Of Pre-Petition Claims For Employees' Wages, Benefits, Reimbursements And Related Taxes And Payment Of Patient Independent Contractors"[3] ("*Wage Motion*"), requesting authorization to pay certain pre-petition wages.

4. On November 12, 2024, Debtors also filed "Unsworn Declaration And Proffer Of Testimony Of Robert Dojonovic In Support Of First Day Hearings" (the "*Dojonovic Declaration*").[4]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No. 8.
[3] ECF No. 6.
[4] ECF No. 12.

5. On November 12, 2024, the Court held a hearing and, *inter alia*, entered an order approving the Wage Motion.[5]

6. On November 22, 2024, Debtors filed "Debtors' Motion For 10 Day Extension [Including Holidays] Of Time To File Schedules And Statement Of Financial Affairs".[6]

7. On November 25, 2024, the Court entered an order granting Debtors until December 5, 2024, to file their Schedules and Statements of Financial Affairs.[7]

8. On December 5, 2024, Debtors filed their schedules and statements of financial affairs (the "*Original Schedules*").[8]

9. On December 16, 2024, the first meeting of creditors was held and concluded.[9]

10. On December 18, 2024, the Court held its initial status conference and ordered the filing of a plan of reorganization no later than February 5, 2025.[10]

11. On January 3, 2025, Debtors filed amended schedules (the "*Amended Schedules*").[11]

12. January 17, 2025, was the last day to file non-governmental proofs of claim.[12]

13. On January 17, 2025, Debtors filed their "Expedited Motion For A Ruling On The Treatment Of Priority Wages Unsecured Claims Excluded From The Debt Cap For The Subchapter V Election" ("*Motion to Exclude Wages*").[13]

14. On January 22, 2025, Kevin M. Epstein, the United States Trustee (the "*US Trustee*") filed "United States Trustee's Objection To Affiliated Debtors' Election To Proceed Under Subchapter V" (the "*Objection*").[14]

15. On February 7, 2025, Debtors filed "Debtors' Response To United States Trustee's Objection To Election Under Subchapter V [DKT. #138]" ("*Debtor's Response*").[15]

16. On Friday, February 28, 2025, the Court held a hearing on the instant matter (the "*Hearing*") and now issues its instant Memorandum Opinion.[16]

---

[5] ECF No. 17.
[6] ECF No. 42.
[7] ECF No. 48.
[8] ECF Nos. 66; 67; 68; 69; 70.
[9] Dec. 18, 2024. Min Entry; ECF No. 20.
[10] ECF No. 99.
[11] *See* ECF Nos. 115-119.
[12] ECF No. 20.
[13] ECF No. 132.
[14] ECF No. 138.
[15] ECF No. 151.
[16] Feb. 28, 2025 Min. Entry.

## II. Conclusions Of Law

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[17] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[18] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), this proceeding contains core matters as it primarily involves proceedings concerning the administration of this estate.[19] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[20] This Court may only hear a case in which venue is proper.[21] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors have their principal place of business in Harlingen, Texas and therefore, venue of this proceeding is proper.[22]

### B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[23] The Objection

---

[17] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[18] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[19] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[20] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).
[21] 28 U.S.C. § 1408.
[22] ECF No. 1.
[23] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

to Debtors' subchapter V election pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) as this matter can only arise in a bankruptcy proceeding. Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[24] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[25] None of the parties have ever objected to this Court's constitutional authority to enter a final order or judgment.[26] These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.  ANALYSIS

In their Motion to Exclude Wages, Debtors request a ruling from this Court that debt arising from certain pre-petition priority wage claims in the amount of $545,198 (the "*Priority Wage Claims*") be excluded in calculating the debt limit for subchapter V eligibility under 11 U.S.C. §§ 101(51D) and 1182(1) of the Bankruptcy Code.[27] Specifically, Debtors assert that the Priority Wage Claims should not be included in the debt limit calculation because (1) the Priority Wage Claims were paid post-petition, were not listed in their Original Schedules and (2) the term "unsecured debts" in §101(51D) does not include unsecured debts arising from priority wage claims.[28]

---

[24] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[25] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . ..").
[26] *See* ECF Nos. 96 at 2; 138; 132.
[27] ECF Nos. 132; 115; 116; 117; 118; 119.
[28] ECF No. 132 at 3,6; Courtroom Hearing – Feb. 28, 2025 (Opening argument).

The US Trustee filed his Objection on January 22, 2025, asserting that Debtors are disqualified from proceeding under subchapter V because all are "members of a group of affiliated debtors . . . that [have] aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $3,024,725."[29] Specifically, the US Trustee asserts that because Debtors do not meet the definition of " small business debtors" as set forth in 11 U.S.C. §§ 101(51D) and 1182(1), the Court should find that Debtors cannot proceed as small business debtors under subchapter V and should instead proceed as standard Chapter 11 debtors.[30] The US Trustee acknowledges that his Objection is untimely under the Bankruptcy Code but requests an excusable neglect finding of this Court to permit the late filing.[31] In response, Debtors assert that the late filing of the Objection by the United States Trustee should not be considered by this Court.[32]

As a preliminary matter, the Court must thus decide whether the US Trustee forfeited his right to object to Debtors' subchapter V election.

**A.   Whether the US Trustee forfeited his right to object to Debtors' subchapter V election**

The Court begins its analysis with the text of Federal Rule of Bankruptcy Procedure ("*Rule*") 1020(b). Rule 1020(b) states that the United States Trustee or a party in interest may file an objection to the debtor's designation.[33] The objection must be filed within 30 days after the conclusion of the meeting of creditors held under § 341(1) or within 30 days after an amendment to the designation is filed, whichever is later.[34]

The first meeting of creditors was held and concluded on December 16, 2024.[35] Pursuant to Rule 1020(b), the last day to object to Debtors' subchapter V election was Wednesday January

---

[29] 11 U.S.C. § 101(51D).
[30] ECF No. 138 at 1-2.
[31] ECF No. 138 at 2.
[32] ECF No. 151.
[33] FED. R. BANKR. P. 1020(b).
[34] *Id.*
[35] *See* Dec. 18, 2024 Min. Entry; ECF No. 20.

15, 2025 ("*Election Objection Deadline*"). The US Trustee's Objection was filed late on January 22, 2025.[36] Thus, the question is whether the Election Objection Deadline is absolute, resulting in the US Trustee forfeiting his right to object.[37] If the US Trustee's Objection is deemed timely, Debtors then have the burden of proving their eligibility to proceed under subchapter V.[38]

The US Trustee does not contest that his Objection was filed late, instead, and pursuant to Rule 9006(b)(1), the US Trustee requests that the Court consider his Objection because the delay in filing it is due to excusable neglect.[39] "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 9006(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[40] In determining whether "excusable neglect" exists, a court may consider various factors, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[41]

Counsel for the US Trustee asserts that excusable neglect exists because (1) there is no prejudice to Debtors because their counsel was aware of the US Trustee's intent to object prior to the Election Objection Deadline and the US Trustee quickly brought the Objection after realizing the matter would not be resolved by Debtors' consensual withdrawal of the subchapter V designation; (2) the length of the delay, a mere seven days, is minimal; (3) the late filed Objection should not have a substantial impact on the judicial proceedings because the issue of Debtors'

---

[36] ECF No. 138.
[37] *See* FED. R. BANKR. P. 1020(b).
[38] *See* 11 U.S.C. § 1182(1); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 235 (Bankr. S.D. Tex. 2021).
[39] ECF No. 138 at 2, ¶ 4; FED. R. BANKR. P. 9006(b)(1).
[40] *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993); *See* FED. R. CIV. P. 6(b).
[41] *Id.* at 395.

eligibility does not require lengthy discovery and could be quickly resolved by the Court; and (4) the US Trustee is acting in good faith as his counsel attempted to resolve the matter without causing the parties to incur further litigation expense.[42]

Counsel for the US Trustee were led to believe by Debtors' counsel that an objection was unnecessary because Debtors' counsel would be voluntarily withdrawing the subchapter V designation, but after the objection deadline expired, Debtors' counsel changed his position and asserted that Debtors were eligible to proceed under subchapter V.[43] During the Hearing, Debtors' counsel conceded that there was sincere confusion and miscommunication between the parties that caused the US Trustee to file his Objection late.[44] As such, the Court finds that the US Trustee filed his Objection in good faith.[45] The delay of seven days was minimal since the Objection was filed shortly after the US Trustee's counsel learned that Debtors were not withdrawing their subchapter V election.[46] The Objection itself invoked minimal discovery as the evidence introduced for the Hearing did not involve any information or documents that were not already on the record before the Objection was filed.[47] Since the Objection required no additional discovery and the delay in filing the Objection was minimal, the Court finds that the delay will not prejudice Debtors nor have a substantial impact on the judicial proceedings in this case.

As such, the Court finds excusable neglect sufficient to consider the US Trustee's Objection pursuant to Rule 9006(b)(1) because the US Trustee filed his Objection in good faith;

---

[42] ECF No. 138 at 2–4.
[43] ECF No. 138 at 3, ¶ 5; Courtroom Hearing – Feb. 28, 2025 (Opening argument).
[44] Courtroom Hearing – Feb. 28, 2025 (Opening argument); *see also* ECF No. 151 at 4.
[45] *See Friedman & Feiger, L.L.P. v. ULofts Lubbock, LLC*, No. CIV.A. 3:09-CV-1384-, 2009 WL 3378401, at *2 (N.D. Tex. Oct. 19, 2009) ("A party's good faith but mistaken reliance on settlement negotiations . . . can constitute excusable neglect in appropriate circumstances.").
[46] Courtroom Hearing – Feb. 28, 2025 (Opening argument); ECF Nos. 151 at 4; 132; 138.
[47] ECF Nos. 174; 181.

the delay of only seven days was minimal; the Objection invoked minimal discovery; and the delay will not prejudice Debtors nor have a substantial impact on the judicial proceedings in this case.[48]

### B.     Subchapter V eligibility

To be eligible to elect to proceed as a small business debtor under subchapter V, Debtors must establish that they qualify as a "debtor" under the definitions set forth in 11 U.S.C. §§ 101(51D) and 1182 of the Bankruptcy Code. Section 1182(1) defines "debtor" for purposes of subchapter V as "a small business debtor."[49] In turn, "small business debtor" is defined in § 101(51D) as:

> a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) *that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing* of the petition or the date of the order for relief *in an amount not more than $3,024,725* (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor[.][50]

The definition goes on to specifically exclude "any member of a group of affiliated debtors under this title that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $3,024,725."[51] In other words, if Debtors have aggregate "noncontingent liquidated secured and unsecured debts in an amount greater than $3,024,725," they are ineligible to make the subchapter V election.[52]

---

[48] ECF Nos. 138; 174; *Pioneer Inv. Services Co.*, 507 U.S. at 391; *Leal v. Woodley & McGillivary*, No. H-08-cv-3452, 2009 U.S. Dist. LEXIS 126698, at *3 (S.D. Tex. Aug. 31, 2009) ("Defendants move to strike Plaintiffs' Reply because it was untimely filed and because it relies on documentary evidence that Plaintiffs did not include in their previous Response to Defendants' Motion to Dismiss or their Motion to Reconsider. Because it is this Court's practice to resolve issues on the merits, Defendants' Motion to Strike will be denied.").
[49] 11 U.S.C. § 1182(1).
[50] 11 U.S.C. § 101(51D) (emphases added).
[51] *Id.*
[52] *In re 305 Petroleum*, 622 B.R. 209, 211 (Bankr. N.D. Miss. 2020).

Debtors did not file any schedules indicating the amount of debt they owed on the Petition Date.[53] On November 22, 2024, Debtors filed a motion to extend the deadline to file their schedules, which the Court granted.[54] Debtors subsequently filed their Original Schedules on December 5, 2024, which did not list any priority employee wage claims.[55] However, Debtors indicated in the Wage Motion that employee wage obligations had accrued as of the Petition Date, and Debtors sought authority from the Court to pay such employee wage obligations post-petition.[56] After a hearing, this Court entered an order authorizing the payment of the Priority Wage Claims and such claims were paid by Debtors.[57] Debtors' Amended Schedules filed on January 3, 2025, include, among other things, the amounts of the Priority Wage Claims[58] and reflect that Debtors had, with the inclusion of the Priority Wage Claims, aggregate noncontingent liquidated secured and unsecured debts in an amount of $3,405,699.[59] Without inclusion of the Priority Wage Claims, Debtors' aggregate noncontingent liquidated secured and unsecured debts total $2,860,501[60] Debtors concede that they would fall under the subchapter V debt limit only if the Court finds that the Priority Wage Claims should not be included in the debt limit calculation.[61]

Thus, the Court must now determine (1) whether the Priority Wage Claims should not be included in calculating the debt limit because they were paid post-petition and not listed in Debtors' Original Schedules and (2) whether the term "unsecured debts" in §101(51D) includes priority wage claims.[62] The Court first begins with a plain text analysis. When the language of the

---

[53] ECF No. 1.
[54] ECF Nos. 42; 48.
[55] ECF Nos. 66; 67; 68; 69; 70.
[56] ECF No. 6.
[57] ECF No. 17; Courtroom Hearing – Feb. 28, 2025 (Opening argument).
[58] Some cells on the spreadsheets in Debtors' Amended Schedules where the total should be are marked with "#", making some amounts in the spread sheets unknown.
[59] ECF Nos. 115; 116; 117; 118; 119.
[60] ECF Nos. 115; 116; 117; 118; 119.
[61] Courtroom Hearing – Feb. 28, 2025 (Opening argument); ECF No. 132 at 3.
[62] ECF No. 132 at 3,6; Courtroom Hearing – Feb. 28, 2025 (Opening argument).

Bankruptcy Code is unambiguous, the Court does not look beyond it.[63] Policy arguments are irrelevant when the statutory language is clear.[64] However, the context in which the statute appears is critical to determining the meaning of statutory language.[65] Section 101(51D) provides that a debtor may not qualify as a small business debtor if they have certain debts that exceed the debt limit "as of the date of the filing of the petition or the date of the order for relief."[66] This language makes clear that the relevant inquiry is whether the amount of certain debts held by a debtor, *as of the date of the filing of the petition*, exceed the debt limit, not whether such debts were actually listed on the schedules or paid post-petition.[67] Here, Debtors have conceded that the debt arising from the Priority Wage Claims existed as of the Petition Date.[68] Accordingly, the fact that the Priority Wage Claims were paid post-petition and that they were not listed in Debtors' Original Schedules does not affect whether they are counted as part of the debt limit in § 101(51D).

Next, the Court must determine whether "unsecured debts" as used in § 101(51D) includes priority wage claims for purposes of subchapter V eligibility. Only "noncontingent liquidated *secured and unsecured debts*" are included in calculating whether a debtor exceeds the Subchapter V debt limit.[69] Debtors assert that since priority wage claims are generally treated differently than other unsecured claims by the Bankruptcy Code and § 1182(1) refers only to "secured debts" and "unsecured debts" when considering eligibility, priority wage claims should not be counted as "unsecured debts" under §§ 1182 and 101(51D).[70]

---

[63] *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis . . . .").
[64] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13- 14 (2000)
[65] *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).
[66] 11 U.S.C. §101(51D)(A).
[67] 11 U.S.C. §101(51D)(A).
[68] ECF Nos. 6; 12; 132 at 6; Courtroom Hearing – Feb. 28, 2025 (Debtors' counsel's oral argument).
[69] 11 U.S.C. § 101(51D) (emphasis added).
[70] ECF No. 132 at 6.

Here, the language of § 101(51D) includes "unsecured debts" as part of the subchapter V debt limit. Section 101(12) defines "debt" to mean "liability on a claim."[71] "Claim" is defined in § 101(5) to a "include right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[72] The Bankruptcy Code does not expressly define when a claim is "unsecured" nonetheless Black's Law Dictionary defines an unsecured claim as a "claim by a creditor who does not have a lien or a right of setoff against the debtor's property."[73] Given that § 101(51D) does not differentiate between different types of unsecured debt, these definitions make clear that "unsecured debts," as used in 101(51D), means *all* types of unsecured debt unless explicitly excluded, which includes priority wage claims that are not secured by collateral.

The Court's plain reading of §§ 101(51D) and 1182(1) is consistent with the rest of the Bankruptcy Code and does not violate the rule against superfluity.[74] Debtors assert that the statutorily imposed term "priority," affixed to a common undefined term "unsecured," shows that the terms "unsecured debt" and "priority unsecured debt" are distinct from one another.[75] Debtors are correct that "attaching the word 'priority' to a category of claims is a distinction with a difference."[76] However, the significance of attaching the word "priority" is merely that a priority wage claim is a kind of unsecured claim that is treated differently than other categories of unsecured claims. This is highlighted in § 507, which establishes the "priority" of all "claims" and categorizes unsecured claims for "wages, salaries, or commissions" as a "Forth" priority unsecured

---

[71] 11 U.S.C. § 101(12).
[72] 11 U.S.C. § 101(5).
[73] *Unsecured Claim*, BLACK'S LAW DICTIONARY (12th ed. 2024).
[74] *See Duncan v. Walker*, 533 U.S. 167,174 (2001).
[75] ECF No. 132 at 7.
[76] ECF No. 132 at 7; *In re Tea Professor, Inc. v. Zhou* (*Tea Station Inv., Inc.*), No. CC-22-1031- SGT, 2022 Bankr. LEXIS 3017, at *6 (B.A.P. 9th Cir. Oct. 18, 2022).

claim.[77] Debtors also note that the official form schedules and the practice of Chapter 11 by the bench and bar make a distinction between general unsecured claims and priority unsecured wage claims.[78] The fact that different categories of unsecured claims are sometimes treated differently does not show that "unsecured debts," as used in § 101(51D), only includes some categories of unsecured debts in the subchapter V debt limit while excluding others. Indeed, the statutory scheme of the Bankruptcy Code shows that when Congress excludes certain debts from the subchapter V debt limit, it does so explicitly.[79] For example, § 101(51D) specifically excludes debts owed to one or more affiliates or insiders, and debts that are contingent or non-liquidated from the debt limit. In contrast, §101(51D) includes "unsecured debts" as part of the debt limit but does not specifically exclude unsecured debts that arise from priority wage claims. Thus, the plain language of §§ 1182(1) and 101(51D), as read in the context of the entire Bankruptcy Code, unambiguously requires priority unsecured wage claims to be included when calculating the subchapter V debt limit.

As such, the Court finds that Debtors' aggregate noncontingent liquidated secured and unsecured debts, including the Priority Wage Claims, as of the date of the filing of the petitions in the combined amount of $3,405,699 exceeded the statutory debt limit of $3,024,725, and Debtors therefore are not eligible as small business debtors and thus may not proceed under subchapter V of the Bankruptcy Code.[80] Debtors' election to proceed as small business debtors is struck and Debtors' cases will proceed as Chapter 11 cases without any special designations of either small

---

[77] 11 U.S.C. § 507(a)(4).
[78] ECF No. 132 at 6.
[79] *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133 ("It is a fundamental canon of statutory construction that the words of statute must be read in their context and with a view to their place in the overall statutory scheme") (internal quotations omitted).
[80] 11 U.S.C. §§ 1182(1); 101(51D).

business debtors pursuant to 11 U.S.C. § 101(51D) or small business cases pursuant to 11 U.S.C. § 101(51C).

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED March 17, 2025

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge